JS 44   (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| THAILARY ZOMMER a/k/a THAILARY LIM, on behalf of herself and all other similarly situated | Navient Corporation, Navient Solutions, LLC f/k/a Navient Solutions, LLC f/k/a Navient Soutions, Inc. f/k/a Sallie Mae, Inc and SLM Corporation |

| **(b)**   County of Residence of First Listed Plaintiff   Union County | County of Residence of First Listed Defendant   New Castle County |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>             THE TRACT OF LAND INVOLVED. |

| **(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*<br>Kevin W. Fay; Golomb Spirt Grunfeld; 1835 Market St, Ste 2900<br>Philadelphia, PA 19103; 215-985-9177 | Attorneys *(If Known)* |
|---|---|

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government<br>Plaintiff
- [ ] 3   Federal Question<br>*(U.S. Government Not a Party)*
- [ ] 2   U.S. Government<br>Defendant
- [x] 4   Diversity<br>*(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place<br>of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place<br>of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a<br>Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure<br>of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury  -<br>Product Liability | [ ] 690 Other | [ ] 423 Withdrawal<br>28 USC 157 | [ ] 376 Qui Tam (31 USC<br>3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product<br>Liability | [ ] 367 Health Care/<br>Pharmaceutical | | **INTELLECTUAL** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel &<br>Slander | Personal Injury<br>Product Liability | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment<br>& Enforcement of Judgment | [ ] 330 Federal Employers'<br>Liability | [ ] 368 Asbestos Personal<br>Injury Product<br>Liability | | [ ] 820 Copyrights<br>[ ] 830 Patent | [ ] 430 Banks and Banking<br>[ ] 450 Commerce |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| [ ] 152 Recovery of Defaulted<br>Student Loans<br>(Excludes Veterans) | [ ] 345 Marine Product<br>Liability | **PERSONAL PROPERTY** | **LABOR** | New Drug Application<br>[ ] 840 Trademark | [ ] 470 Racketeer Influenced and<br>Corrupt Organizations |
| [ ] 153 Recovery of Overpayment<br>of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud<br>[ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards<br>Act | [ ] 880 Defend Trade Secrets<br>Act of 2016 | [ ] 480 Consumer Credit<br>(15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle<br>Product Liability | [ ] 380 Other Personal<br>Property Damage | [ ] 720 Labor/Management<br>Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer<br>Protection Act |
| [x] 190 Other Contract | [ ] 360 Other Personal<br>Injury | [ ] 385 Property Damage<br>Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury -<br>Medical Malpractice | | [ ] 751 Family and Medical<br>Leave Act | [ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI | [ ] 850 Securities/Commodities/<br>Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement<br>Income Security Act | | [ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 870 Taxes (U.S. Plaintiff<br>or Defendant) | Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate<br>Sentence | | [ ] 871 IRS—Third Party<br>26 USC 7609 | [ ] 896 Arbitration<br>[ ] 899 Administrative Procedure |
| [ ] 240 Torts to Land | [ ] 443 Housing/<br>Accommodations | [ ] 530 General | | | Act/Review or Appeal of<br>Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities -<br>Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of<br>State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities -<br>Other | **Other:**<br>[ ] 540 Mandamus & Other | [ ] 462 Naturalization Application<br>[ ] 465 Other Immigration | | |
| | [ ] 448 Education | [ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee -<br>Conditions of<br>Confinement | Actions | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

- [x] 1   Original<br>Proceeding
- [ ] 2   Removed from<br>State Court
- [ ] 3   Remanded from<br>Appellate Court
- [ ] 4   Reinstated or<br>Reopened
- [ ] 5   Transferred from<br>Another District<br>*(specify)*
- [ ] 6   Multidistrict<br>Litigation -<br>Transfer
- [ ] 8   Multidistrict<br>Litigation -<br>Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C 1367

Brief description of cause:
Breach of contract in violation of the New Jersey Consumer Fraud Act

## VII.  REQUESTED IN COMPLAINT:

- [x] CHECK IF THIS IS A **CLASS ACTION**<br>UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

| DATE<br>12/13/2022 | SIGNATURE OF ATTORNEY OF RECORD<br>/s/ Kevin W. Fay |
|---|---|

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: <u>Nature of Suit Code Descriptions.</u>

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| THAILARY ZOMMER a/k/a THAILARY LIM, on behalf of herself and all others similarly situated, | : : : | |
| | : | Civil Action No. |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NAVIENT CORPORATION, NAVIENT SOLUTIONS, LLC f/k/a NAVIENT SOLUTIONS, INC. f/k/a SALLIE MAE, INC., and SLM CORPORATION, | : : : : | |
| | : | |
| Defendants. | : | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Thailary Zommer a/k/a Thailary Lim, individually and on behalf of all other similarly situated residents of the United States of America, by and through the undersigned attorneys, brings this action against Defendants Navient Corporation, Navient Solutions, LLC f/k/a Navient Solutions, Inc. f/k/a Sallie Mae, Inc. (collectively "Navient"), and SLM Corporation ("Sallie Mae" and together with Navient, "Defendants") and alleges as follows:

1.      This is an action for breach of contract, violation of the New Jersey Consumer Fraud Act and other similar statutes nationwide, and unjust enrichment arising out of Defendants' failure to apply a 0.25% interest rate discount on the student loan accounts of Plaintiff and other similarly situated class members.

2.      Plaintiff was entitled to the interest rate reduction because she agreed to pay by Auto Pay, an option in which bills are paid automatically each billing cycle on their due dates through the Defendant's online portal using the consumer's chosen method of payment, including by credit card or by ACH from a bank account.

3.      Defendants benefit when borrowers utilize the Auto Pay option in at least the following respects:

     a.      increased cash flow that results when customers pay on time, every time, without even thinking about it;

     b.      having the certainty, knowledge, and expectation of the exact date and amount of money that borrowers will pay makes it easier for Defendants to plan and manage their expenses;

     c.      increased payment security for Defendants;

     d.      less time spent on collecting payments; and

     e.      lower business costs.

4.      Defendants offered the 0.25% interest rate discount to borrowers who agreed to pay by Auto Pay in exchange for substantial consideration, including those listed above and other benefits to Defendants.

5.      For more than a decade, Plaintiff consistently made monthly payments via Auto Pay, during which time she was entitled to an interest rate discount that she never received.

6.      In late November 2022, Plaintiff received a notice from Defendant Navient disclosing that Plaintiff was eligible to receive an interest rate discount for Auto Pay and admitting that Plaintiff's monthly payment amount had previously been calculated using the wrong interest rate. A copy of the November 22, 2022 Notice from Navient is attached hereto at Exhibit "A."

7.      Upon information and belief, Defendants conducted an internal audit or otherwise became aware that Plaintiff and other class members were entitled to an interest rate discount for using Defendant's Auto Pay feature, but that they never received the discounted rate. The borrowers who were identified in Defendants' review or audit were the ones who received a notice in substantially similar or the same form as Exhibit "A."

8.      For years, as a result of Defendant's failure to apply the discounted rate, Plaintiff and other class members made excess payments that should have been applied directly towards principal, but, upon information and belief, Defendants have not properly applied those excess payments to the loan balances of Plaintiff and other class members. This has caused Plaintiff and other class members to pay more money towards their student loans than they should have paid.

9.      Defendants' past and ongoing acts are deliberate and unconscionable.

10.     Plaintiff and class members have been damaged as a direct result of Defendants' willful and intentionally deceptive conduct.

11.     As a result of Defendants' misconduct, described in more detail below, Plaintiff and other borrowers have been severely damaged and thus Plaintiff has been forced to commence this litigation on behalf of herself and the proposed Class.

12.     Plaintiff thus brings this class action complaint, on behalf of herself and all others similarly situated, alleging claims for breach of contract, violation of the New Jersey Consumer Fraud Act as well as other similar consumer protection statutes nationwide, and unjust enrichment. Plaintiff asks this Court to award her and the Class damages and all such other relief to which they are entitled.

## PARTIES

13.     Plaintiff Thailary Zommer a/k/a Thailary Lim is a resident of Union County, New Jersey. She attended Pace Law School from 2003-2006. She took out loans to pay for her studies totaling $55,956.64 and she agreed to an interest rate of 4.5%. Plaintiff signed up to pay by Auto Pay beginning in 2007, which should have reduced her interest rate by 0.25%, but she never received the interest rate discount.

14.     Navient Corporation is a publicly traded Delaware corporation that services and collects student loans. It is traded on the NASDAQ stock exchange under ticker symbol "NAVI."

3

Navient Corporation's principal place of business is at 123 Justison Street, Suite 300, Wilmington, Delaware 19801. The company was formed in 2014 by the split of Sallie Mae into two distinct entities.

15.     Navient Solutions, LLC, formerly Navient Solutions, Inc., formerly Sallie Mae, Inc., is a Delaware corporation and a wholly owned subsidiary of Navient Corporation.

16.     SLM Corporation is a publicly traded Delaware corporation that provides consumer banking and its headquarters are 300 Continental Drive, Newark, Delaware 19713.

17.     By way of background, in 1984, Sallie Mae became a publicly traded company, trading under the ticker symbol "SLM." From approximately 1997 to 2004, Sallie Mae transitioned to becoming a private company, during which time SLM Holding Corporation was incorporated and eventually became SLM Corporation.

18.     Sallie Mae became fully privatized by 2004, with SLM Corporation as the parent company and subsidiary Sallie Mae, Inc. responsible for most of the company's servicing and collections businesses. From 2004 until April 2014, SLM Corporation and its subsidiaries operated through one corporate structure in originating loans issued under the Federal Family Education Loan Program.

19.     SLM developed and implemented lending policies; marketed student loans and loan packages to schools and students; funded and distributed loans; and also serviced and collected loans. In 2014, however, these business activities were split into two separate corporate structures.

20.     In April 2014, the former SLM Corporation separated into two publicly-traded entities: (i) Navient Corporation, a servicing and debt collection business, and (ii) a new SLM Corporation, a student lending business.

21.     Pursuant to the terms of the 2014 split, Navient Corporation assumed responsibility for liabilities resulting from the pre-reorganization conduct of old SLM Corporation and its subsidiaries related to servicing student loans. Navient Corporation is therefore included in this Complaint for servicing misconduct occurring prior to 2014, as a successor to SLM Corporation, as well as the similar conduct that it engaged in after it was formed as a stand-alone entity.

22.     The 2014 corporate split also provided for the transfer of Sallie Mae, Inc. to Navient Corporation and its subsidiaries. Sallie Mae, Inc. then changed its name to Navient Solutions, Inc.

23.     Navient Corporation issues consolidated annual reports and SEC filings, which include consolidated financial statements and balance sheets for itself and its subsidiaries.

24.     Navient Corporation owns or leases the offices used by its subsidiaries.

25.     Navient Corporation controls and directs the hiring of employees for its subsidiaries.

26.     Navient Corporation consents to, has knowledge of, approves of, directs, and controls the policies, practices, and acts of its subsidiaries, including the misconduct described herein.

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are 100 or more Class Members and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.  Additionally, at least one Class member is a citizen of a state different from the corporate domicile of the Defendant.

28.     This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that the class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all

members is impractical, there are substantial questions of law and fact common to the class, and this case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

      a.    questions of law and fact enumerated below, which are all common of the class, predominate over any questions of law or fact affecting only individual members of the class;

      b.    a class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

      c.    the relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

      d.    there are no unusual difficulties foreseen in the management of this class action.

29.    The Court has personal jurisdiction over the Defendants, who have at least minimum contacts with the State of New Jersey because the Defendants conduct business there and have availed themselves of the laws of New Jersey.

30.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

31.    Venue in the United States District Court for the District of New Jersey is proper because the Defendants transact business within this District and a substantial part of the events giving rise to the claims at issue in this Complaint occurred in this District.

32.    All conditions precedent to this action have occurred, been performed, or have been waived.

## **FACTUAL ALLEGATIONS**

**A.**  **Navient Offers an Interest Rate Discount of 0.25% for Borrowers who Enroll and Use Auto Pay**

33.      Navient, and Sallie Mae before it, was one of the first loan servicers to encourage on-time payment through offering borrowers an interest rate reduction when the customer enrolled in Auto Pay. *See* Website Printout from Sallie Mae attached hereto at Exhibit "B."

34.      In 2015, Navient touted its Auto Pay program in a letter to the Consumer Financial Protection Bureau ("CFPB"): "Immediately upon enrolling [in Auto Pay], the interest rate reduction [of 0.25%] is applied." *See* Navient Response to CFPB dated July 13, 2015 at 18, available at https://news.navient.com/static-files/dba62eca-fd94-4412-bde8-4b1c8bc4f095 (last visited December 13, 2022).

35.      Navient regularly sponsors campaigns and promotions to encourage customers to enroll in Auto Pay. *Id.*

36.      During one six-month period in 2015, Navient enrolled nearly 140,000 new customers in its Auto Pay program. Overall, during that time, nearly 40 percent of payments to Navient were made through Auto Pay. *Id.*

37.      When Plaintiff logs into her account on Navient's website, the following message is displayed regarding the 0.25% interest rate reduction for Auto Pay:

| Loan/Borrower Benefits | |
|---|---|
| A 0.25% INTEREST RATE REDUCTION APPLIED AFTER THE BORROWER SUCCESSFULLY ACTIVATES ACH PAYMENTS. | |
| Option | Automatic Debit Benefit - Ct25 ✖ |
| Status | Awarded 01/08/2019 |

38.      There is no dispute that for customers like the Plaintiff that use Auto Pay, a .25% rate discount is promised and should be applied.

39.      This action arises from Defendants' failure to apply the promised interest rate discount to borrowers who paid by Auto Pay, and for Defendants' attempt to cover up the scheme

through incomplete adjustments and misallocations of funds that are designed to benefit Defendants, to the extreme financial detriment of Plaintiff and the Class.

**B. Plaintiff Enrolled in Auto Pay and made Payments Through Auto Pay, But Never Received the Discount**

40.     Plaintiff took out two loans to pay for her education and consolidated them.

41.     The original disbursement date for both loans was July 21, 2006.

42.     When Plaintiff consolidated the loans, she locked in the interest rate of 4.5%.

43.     The original principal amount of each loan was $30,328.64 and $25,628.00, for a total amount of $55,956.64. Currently, the estimated payoff date is January 21, 2037.

44.     Plaintiff agreed to pay by Auto Pay in or about 2007.

45.     By signing up for Auto Pay, Plaintiff expected to receive a discount in the form of a 0.25% interest rate reduction based upon the express promises made by the Defendants, and its predecessor lenders, at all relevant times from 2007 to 2022.

46.     Despite these promises, Plaintiff did not receive the promised discounted interest rate on her loan.

47.     At all relevant times, Defendants' reporting on Plaintiff's loan was misleading in that Defendants' written and oral communications to Plaintiff was ambiguous and did not include clear information about the rate paid or discounts applied, which made it impossible for Plaintiff to learn, discover, uncover or know what interest rate she was being charged versus what rate she should have been charged.

**C. Navient Conducted a Review or an Internal Audit, Identified Class Members, and Sent Notices**

48.     In late November 2022, Plaintiff received a notice from Defendant Navient that was dated November 22, 2022 and stated as follows:

THAILARY, you'll be receiving an updated payment schedule and terms for your loans.

You are currently receiving or are eligible to receive an interest rate discount benefit (e.g., Auto Pay) on your student loans. However, your Monthly Payment Amount was calculated using the loan's original interest rate – potentially making your Monthly Payment slightly higher than necessary.

. . . [W]e'll calculate your Monthly Payment Amount using the discounted interest rate and you'll receive a new payment schedule and terms which may result in a lower Monthly Payment Amount.

A copy of the November 22, 2022 Notice from Navient is attached hereto at Exhibit "A."

49. Upon information and belief, Defendants conducted a review or an internal audit or otherwise became aware that Plaintiff and other class members were entitled to an interest rate discount for Auto Pay that they never received. Defendant sent notices in similar or substantially the same form as Exhibit "A" to all class members.

50. For years, because they were charged the wrong interest rate on their loans, Plaintiff and other class members made payments above and beyond what they were required to pay. These excess payments should have been applied directly to principal, decreasing the total amount of money owed, but, upon information and belief, Defendants did not properly apply those excess payments directly to the loan balances of Plaintiff and other class members. This has caused Plaintiff and other class members to pay more in interest on their student loans than they should have paid or would have paid, to the direct benefit of the Defendants.

## CLASS ALLEGATIONS

**A.    Class Definitions**

51. Plaintiff brings this action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other persons similarly situated. Plaintiff seeks to represent the following classes:

**Nationwide Class**:

> All borrowers in the United States of America in good standing who made student loan payments to Defendants via Auto Pay or a similar auto-debiting program, and received a notice from Navient in a form substantially similar to the notice attached hereto at Exhibit "A." Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees, class counsel in this matter and the Court personnel in this matter.

**New Jersey Sub-Class**:

> All borrowers in the State of New Jersey in good standing who made student loan payments to Defendants via Auto Pay or a similar auto-debiting program, and received a notice from Navient in a form substantially similar to the notice attached hereto at Exhibit "A." Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees, class counsel in this matter and the Court personnel in this matter.

52.    Plaintiff reserves the right to modify or amend the definitions of the proposed classes before the Court determines whether certification is appropriate.

53.    Defendants subjected Plaintiff and the respective Class Members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.

**B.    Numerosity**

54.    The proposed classes are so numerous that joinder of all members would be impracticable.  Defendants have serviced a large number of student loans in the State of New Jersey, as well as nationwide.  Many of these borrowers enrolled in and pay with Auto Pay.  The individual Class Members are ascertainable, as the names and addresses of all class members can be identified in the business records maintained by Defendants.  The precise number of class members for each class numbers at least in the thousands and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint such that

it would be impractical for each member to bring suit individually.  Plaintiff does not anticipate any difficulties in the management of the action as a class action.

**C.    Commonality**

55.    There are questions of law and fact that are common to Plaintiff and Class Members' claims.  These common questions predominate over any questions that go particularly to any individual member of the Class.  Among such common questions of law and fact are the following:

a.    Whether Navient or its predecessor(s) failed or refused to apply the 0.25% interest rate discount as required by law or by contract;

b.    Whether Navient or its predecessor(s) breached the loan contracts or promissory notes with Plaintiff and the Class by failing or refusing to apply the 0.25% interest rate discount as required by law or by contract;

c.    Whether Navient or its predecessor(s) applied excess student loan payments directly toward the reduction of borrowers' principal balance as required by law or by contract;

d.    Whether Navient or its predecessor(s) placed excess student loan payments in an interest-bearing account and retained the interest earned;

e.    Whether an objective consumer would be deceived by Navient's or its predecessor(s)' Auto Pay and excess payment practices as well as material mis-statements and omissions made by Defendants to consumers regarding interest rate discounts for Auto Pay;

f.    Whether Navient or its predecessor(s) intentionally and unjustifiably interfered with Plaintiff's and the Classes' rights under the loan contracts or promissory notes by requiring borrowers to pay more interest on their student loans than they should have and also profiting from that interest; and

g.    Whether Plaintiff and the Class Members are entitled to damages and/or injunctive relief as a result of Navient's or its predecessor(s)' conduct.

**D.    Typicality**

56.    Plaintiff is a member of the Classes she seeks to represent.  Plaintiff's claims are typical of the respective classes' members' claims because of the similarity, uniformity, and

common purpose of Defendants' unlawful conduct. Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff has as a result of Defendants' wrongful conduct.

**E.    Adequacy of Representation**

57.    Plaintiff is an adequate representative of the classes she seeks to represent and she will fairly and adequately protect the interests of the classes. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent her. There is no hostility between Plaintiff and the unnamed class members. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

58.    To prosecute this case, Plaintiff has chosen the undersigned law firms, which are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**F.    Requirements of Fed. R. Civ. P. 23(b)(3)**

59.    The questions of law or fact common to Plaintiff and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the classes. All claims by Plaintiff and the unnamed class members are based on the failure to apply the 0.25% interest rate discount and subsequent cover-up.

60.    Common issues predominate when, as here, liability can be determined on a class-wide basis, even if there will be some individualized damage determinations.

61.    As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

G.    **Superiority**

62.    A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

a.    Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;

b.    Individual claims by class members are impractical because the costs to pursue individual claims may exceed the value of what any one class member has at stake.  As a result, individual class members may have no interest in prosecuting and controlling separate actions;

c.    There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

d.    The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

e.    Individual suits would not be cost effective or economically maintainable as individual actions; and

f.    The action is manageable as a class action.

H.    **Requirements of Fed. R. Civ. P. 23(b)(1) & (2)**

63.    Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

64.    Defendants have acted or failed to act in a manner generally applicable to the entirety of the class or classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the classes as a whole.

<u>**COUNT I**</u>
**BREACH OF CONTRACT**
**AND BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**
**(As to all Classes and all Defendants)**

65.    Plaintiff, on behalf of herself and the Class Members, re-alleges and incorporates every paragraph of this Complaint and further alleges:

13

66.     A duty of good faith and fair dealing is implied in every contract in the Commonwealth, including the contract at issue in this case between Plaintiff and Defendants for an interest rate discount in exchange for paying by Auto Pay on a student loan.

67.     Plaintiff and all similarly situated Class Members have loan agreements and/or promissory notes that are owned and/or serviced by Defendants.

68.     Plaintiff and these Class Members' loan agreements are written on uniform forms and contain the same or substantially similar provisions.

69.     Upon information and belief, at the time that Plaintiff signed up for Auto Pay in or about 2007, she was specifically induced to do so by the written and/or oral promises made contemporaneously at the time by Navient and its predecessors in marketing, advertising, and website statements that Plaintiff would receive a 0.25% interest rate discount.

70.     On their website and in their marketing and advertising statements and contract documents, Defendants promise to provide a 0.25% interest rate discount to borrowers who pay by Auto Pay. *See supra* ¶¶ 36, 37, 38, 48, and *infra* Exhibit "A" attached hereto.

71.     This language is the same or substantially similar to provisions within agreements for all Class Members regarding the interest rate discount for Auto Pay.

72.     Defendants' breached the contracts and their duty of good faith and fair dealing by failing to give the requisite discount and by failing to remedy the deficiency when it was discovered.

73.     Defendants' practices and procedures caused Plaintiff and class members to pay more in interest than they should have paid or otherwise would have paid if Defendants had not breached the contract. Among other things, Defendants practices and procedures deprived borrowers of the reduction in interest rate, which in turn caused them to pay more in interest than

they should have such that their principal was not decreased as much as it should have. The excess payments thereby caused more of their funds than required to be applied to interest on each payment and on each future payment.

74.     Defendants' failure to honor the interest rate discount and refusal to apply excess payments to Plaintiff's and the Class members' principal constitutes breach of contract.

75.     Plaintiff and the Class Members have suffered damages as a result of Defendants' breaches of contract.

## COUNT II
### VIOLATION OF N.J. STAT. ANN. § 56:8-1, *et seq.*
### NEW JERSEY'S CONSUMER FRAUD ACT AND OTHER SIMILAR STATUTES NATIONWIDE
### (As to the New Jersey Sub-Class and against all Defendants)

76.     Plaintiff, on behalf of herself and the Class Members, re-alleges and incorporates every paragraph of this Complaint and further alleges:

77.     Defendants, acting by and through their duly authorized agents, servants, workmen or employees acting within the course and scope of their employment and on the business of said employer, made material misrepresentations of fact concerning the nature and quality of the loan agreements and the Auto Pay option for the sole purpose of inducing justifiable reliance by Plaintiff and members of the Class in paying the loan via Auto Pay which Defendants represented would entitle Plaintiff and the members of the classes to a 0.25% interest rate discount on their loan, when Defendants knew or should have known that these representations were in fact false, fraudulent and misleading. Defendants therefore have violated New Jersey's Consumer Fraud Act ("NJCFA"), and other similar state statutes nationwide.

78.     The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment,

suppression, or omission, in connection with the sale or advertisement of any merchandise…."
N.J. Stat. Ann. § 56:8-2.

79.    Defendants entered into loan contracts with its borrowers in which Defendants chose the language to bind the parties relating to payment terms.

80.    Defendants have engaged in unlawful conduct as a general business practice by breaching those contracts and misrepresenting its practices in the contracts. By engaging in the above-described practice and the actions and omissions herein alleged, Defendants have committed one or more unlawful acts in violation of the NJCFA.

81.    Plaintiff and members of the New Jersey Sub-Class have suffered ascertainable losses of money, in the form of excess payments that were not properly applied to the loan, as a result of various unfair and/or deceptive acts or practices by Defendants, including but not limited to the following:

a.    Representing that the Auto Pay option has provisions, characteristics, uses or other benefits or, lack thereof, that, in fact, it did not have;

b.    Advertising the Auto Pay option with the intent not to provide the 0.25% interest rate discount as promised;

c.    Advertising the Auto Pay option with the intent not to supply reasonably expected benefits;

d.    Failing to comply with the terms of guarantees and/or warranties given to Plaintiff prior to, at the time of, and after, Plaintiff's agreement to pay by Auto Pay; and,

e.    Engaging in the aforementioned fraudulent and/or deceptive conduct which created a likelihood of confusion and misunderstanding.

82.    Plaintiff and members of the Classes justifiably relied upon the material misrepresentations made by Defendants concerning the nature and quality of the Auto Pay option and, as a result of such reliance, suffered those damages and losses set forth above.

83.     Defendants intended for customers to rely on the material misrepresentations with regard to how Defendants would interpret their policies and procedures and implement payment options for their customers.

84.     Had Plaintiff and the Classes known the actual facts or legal implications of those acts, they would have taken steps to ensure the receipts of the promised discount, including but not limited to seeking other loan servicing opportunities or not using Auto Pay. Therefore, a causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered.

85.     By reason of the foregoing, Defendants have been improperly and unjustly enriched to the detriment of Plaintiff and the New Jersey Sub-Class in an amount to be proven at trial. Plaintiff and the New Jersey Sub-Class are entitled to have disgorged and restored to them all improperly taken monies as a result of the conduct as alleged herein.

86.     Defendants' conduct caused Plaintiff and the members of the New Jersey Sub-Class to suffer an ascertainable loss. In addition to direct monetary losses in that they paid more in interest than they should have, they received less than what was promised to them in their loan agreement benefits in terms of a more favorable interest rate, and are therefore entitled to recover such damages, together with appropriate penalties, including treble damages, and legal fees and costs.

87.     As a result, Plaintiff and the members of the New Jersey Sub-Class have suffered an ascertainable loss of monies and, pursuant to NJ Stat. § 56:8-19, they are entitled to threefold damages.

88.     WHEREFORE, Plaintiff and the New Jersey Sub-Class demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

## COUNT III
## UNJUST ENRICHMENT[1]
### (As to all Classes and against Defendants)

89.    Plaintiff, on behalf of herself and the Class Members, re-alleges and incorporates every paragraph of this Complaint and further alleges:

90.    Defendants and/or their affiliates received from Plaintiff and Class Members benefits, in the form of excess funds paid for interest that should not have been charged, or alternatively amounts that should have been applied directly to principal at the time of the payments.

91.    Further, Defendants received financial benefits in the form of increased interest income due to its own deliberate and purposeful failure or refusal to apply the discounted interest rate that resulted in excess payments by Plaintiffs and the Class not directly applied to the principal loan balances.

92.    In addition, Defendants received financial benefits in the form of increased security on the loans in that the payments were not towards the principal loan balance.

93.    As a result, Plaintiff and the Class have conferred a benefit on Defendants.

94.    Defendants had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them.

95.    Defendants will be unjustly enriched if they are allowed to retain the aforementioned benefits, and each Class Member is entitled to recover the amount by which Defendants were unjustly enriched at his or her expense.

## PRAYER FOR RELIEF

---

[1] Plaintiff and the Class plead unjust enrichment as an alternative to their contractual claims against Defendants.

WHEREFORE, Plaintiff, on behalf of herself and all similarly situated individuals, demands judgment against the Defendants as follows:

a.      Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2), Rule 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure and declaring Plaintiff and their counsel to be representatives of the Classes;

b.      Enjoining Defendants from continuing the acts and practices described above;

c.      Awarding damages sustained by Plaintiff and the Classes as a result of Defendants' breaches of the contracts, together with pre-judgment interest;

d.      Finding that Defendants have been unjustly enriched and requiring them to refund all unjust benefits to Plaintiff and the Classes, together with pre-judgment interest;

e.      Awarding Plaintiff and the Classes costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Classes' counsel and experts, and reimbursement of litigation expenses.

f.      Awarding Plaintiff and the New Jersey Class treble damages, injunctive relief, declaratory relief, attorneys' fees, and costs under NJCFA; and,

g.      Awarding such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff and the Classes request a jury trial for any and all Counts for which a trial by jury is permitted by law.

Respectfully submitted,

/s/

Richard M. Golomb, Esquire
NJ Bar No.: 013181984
Kenneth J. Grunfeld, Esquire
NJ Bar No.: 026091999

19

Kevin W. Fay, Esquire
NJ Bar No.: 005692010
Golomb Spirt Grunfeld, P.C.
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Phone: (215) 985-9177
Fax:     (215) 985-4169
Email: rgolomb@golombleglal.com
           kgrunfeld@golomblegal.com
           kfay@golomblegal.com

W. Daniel "Dee Miles, Esquire
(Pro Hac Vice forthcoming)
C. Lance Gould, Esquire
(Pro Hac Vice forthcoming)
Beasley, Allen, Crow, Methvin, Portis &
Miles, P.C.
218 Commerce Street
Montgomery, AL 36104
Phone: (334) 269-2343
Email: Dee.Miles@BeasleyAllen.com
           Lance.Gould@BeasleyAllen.com

*Attorneys for Plaintiff and the Classes*

Dated:  December 13, 2022

# EXHIBIT A



P.O. BOX 9500
WILKES-BARRE, PA 18773-9500

THAILARY LIM
42 WENDELL PL
CLARK NJ 07066-2323

# THAILARY, you'll be receiving an updated payment schedule and terms for your loans.

You are currently receiving or are eligible to receive an interest rate discount benefit (e.g., Auto Pay) on your student loans. However, your Monthly Payment Amount was calculated using the loan's original interest rate – potentially making your Monthly Payment slightly higher than necessary.

Unless you are already in a repayment plan based on your income, we'll calculate your Monthly Payment Amount using the discounted interest rate and you'll receive a new payment schedule and terms which may result in a lower Monthly Payment Amount.

**What you can do now**
You may request an Auto Pay amount that is greater than your Monthly Payment Amount. Navient will withdraw the requested Auto Pay amount if it's greater than or equal to the Monthly Payment Amount. Please log in to your account to update the requested Auto Pay amount.

**We're here to help**
If you have any questions about this update, visit us online or give us a call.

**Important disclosure(s)**

*Your loan servicer*
Your loans are serviced by Navient Solutions, LLC (NMLS# 212430).

**Account number**
9057786876 - 1

**Date**
11/22/22

**Manage your account online**
Navient.com

**Phone number**
888-272-5543

Monday – Thursday,
8 a.m. – 9 p.m.
Friday, 8 a.m. – 8 p.m. Eastern

Remember, the more you can pay each month, the less you'll pay in interest over the life of your loan(s).

Para comunicarse en Español con 'Atención al Cliente', llame gratis al (888) 272-5543, y marque el numero correspondiente.

*905778687611551149*

K134        SYSTEM        S        0001

# EXHIBIT B





Student loans      Manage your private student loans      Prepare to pay your student loans

# Ways to make student loan payments

What works best for you? Choose how you want to make your monthly student loan payments.

## Auto debit means never having to remember

If you aren't enrolled in our automatic debit program, we encourage you to sign up for the easiest, most convenient way to make your payments! When you enroll in auto debit, we'll automatically withdraw your payment every month from your authorized bank account.

- You can choose to pay the Current Amount Due (the amount required to be paid each month until the loan is paid in full) or pay more each month, which may help lower your Total Loan Cost.

- There's no penalty for paying early or paying extra.
  - Making additional payments while enrolled in auto debit won't change the amount we withdraw.

- Enrolling may qualify you for a 0.25% interest rate reduction so long as the loan payment is successfully withdrawn monthly and the loan is eligible—it must be in active repayment, not forbearance or deferment, and cannot be a K-12 loan.

**Enroll in auto debit**

## Pay it online

To add your bank account information and pay online, **log in to your account**. Once you've added it, you can submit your monthly student loan payment electronically.[1]

- If you have multiple bank accounts, you can make your student loan payments from a different bank account —just remember to schedule the payment every month.

- Payments made online will be effective the same day for which they are scheduled. However, payments may not be reflected in your online Transaction History for 2-4 days after the effective date.

If you want to add a little extra to your monthly payments, online is the way to go! You can also make online payments in conjunction with auto debit.

## Your loans are wherever you are with the Sallie Mae® app

Make and manage Sallie Mae student loan payments anytime, anywhere with the Sallie Mae app on your iPhone®, Android™ phone, or Apple Watch®.

- Easily make payments for multiple loans.

- Get a quick snapshot of every loan, including the Current Balance, Total Amount Due, and interest rate.

- View payment history.

- Log in quicker with iPhone® Touch ID.



- Pay your loans and view the confirmation on your Apple Watch.

- Payments made on the app will be effective the same day for which they are scheduled. However, payments may not be reflected in your online Transaction History for 2-4 days after the effective date.

Download the award-winning Sallie Mae app.

 

## Phone it in

Making your student loan payments through our automated phone system is convenient and easy! Have your bank account information handy and visit our **Contact Us** page.

Payments by phone will be effective the same day for which they are scheduled. However, payments may not be reflected in your online Transaction History for 2-4 days after the effective date.

## Support your mail carrier

Mailing in your check or money order still works—just be sure to mail your payment at least 10 days before your due date so it's credited in time.

If your payment is late, you may be charged a late fee. If your check doesn't clear for any reason, a returned check fee may be charged.

### Borrowers

- Include the remittance slip and 16-digit Loan Group Number with your payment to ensure it's properly allocated to your loans.

- Make your check or money order payable to Sallie Mae and mail your payments to the Borrower Payment Address:
  **Sallie Mae**
  **P.O. Box 8459**
  **Philadelphia PA 19101-8459**

- We can't process instructions written on the check or remittance slip.

### Cosigners

- Submit individual payments with the applicable 16-digit Loan Number for each loan you've cosigned, along with the remittance slip.

- Make your check or money order payable to Sallie Mae and mail your payments to the Cosigner Payment Address:
  **Sallie Mae**
  **P.O. Box 8377**
  **Philadelphia PA 19101-8377**

- We can't process instructions written on the check or remittance slip.



## Third-party bill-pay services

Third-party bill-pay services may include payment services offered by your financial institution. Provide them with the applicable 16-digit Loan Group Number and be sure the payment is processed at least 10 days before your due date so it's credited in time.

### Borrowers

- Provide them with the applicable 16-digit Loan Group Number.

- Make sure your student loan payment is directed to Sallie Mae at this borrower payment address:
  **Sallie Mae**
  **P.O. Box 8459**
  **Philadelphia PA 19101-8459**

### Cosigners

- Cosigners must submit individual payments for each loan they've cosigned.

- Make sure your student loan payment is directed to Sallie Mae at this cosigner payment address:
  **Sallie Mae**
  **P.O. Box 8377**
  **Philadelphia PA 19101-8377**

## Don't be late!

If you don't pay your loan's Current Amount Due (and any Past Due Amount) within 15 days of the Current Amount Due Date, you may be charged a late fee.

- The late fee amount is listed on your loan's Disclosure and your billing statement.

- If your student loan payments are late, you may lose your eligibility for borrower benefits or repayment incentives.

- Late payments may be reported to consumer reporting agencies, which could negatively impact your credit report.

---

# Related topics

**Tips for repaying your student loans**

Save yourself some money and find out how you may be able to lower your Total Loan Cost.

**Graduated Repayment Period**

Apply for the Graduated Repayment Period to get flexibility on your loan payments by making interest-only payments for one year after your separation period ends.

**Sallie Mae® app**

Make and manage your Sallie Mae student loan payments from your Apple® or Android™ phone anytime, anywhere.

---

1. When you provide a check as payment, you authorize us to follow our standard practice and use information from your check to make a one-time electronic fund transfer from your account. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution. In certain unusual circumstances, such as for technical or processing reasons, we may instead process your payment as a check transa

Chat With Us

Apple, iPhone, Apple Watch, Siri, and the Apple logo are trademarks of Apple Inc., registered in the U.S. and other countries. App Store is a service mark of Apple Inc., registered in the U.S. and other countries.

Android, Google Play and the Google Play logo are trademarks of Google Inc.

Home  ›  Student loans  ›  Manage your private student loans  ›  Prepare to pay your student loans  ›  Ways to make student loan payments

About us

Careers

For investors

Media

Blog

Leading research

Contests

Benefits Transparency

Cosigner responsibilities

Become a school partner

Partner resources

Military resources

Beware of debt relief offers

Contact us

Website feedback

FAQs

Sitemap

Terms of use  |  Protect your privacy  |  Avoid online fraud  |  Accessibility statement  |  Social media guidelines  |

Do not sell my personal information

© 2022 Sallie Mae Bank. All rights reserved. Sallie Mae, the Sallie Mae logo, and other Sallie Mae names and logos are service marks or registered service marks of Sallie Mae Bank. All other names and logos used are the trademarks or service marks of their respective owners. SLM Corporation and its subsidiaries, including Sallie Mae Bank are not sponsored by or agencies of the United States of America.

Chat With Us



Chat With Us